*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ELISSA SHANIGAN, | ) | |
| | ) | Supreme Court No. S-15956 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-05578 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TERRENCE SHANIGAN, | ) | |
| | ) | No. 7144 – January 6, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Elissa Przywojski, pro se, Anchorage, Appellant. No appearance by Appellee Terrence Shanigan.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices.

MAASSEN, Justice.

# I.    INTRODUCTION

A mother appeals from an order reducing the amount of child support the father was required to pay. The mother argues that the superior court relied on incorrect income calculations from the Child Support Services Division (CSSD) and that it erred in finding a material change in circumstances sufficient to warrant a reduction in child support. She also argues that the court should have required the father to submit an income affidavit, and that its failure to do so improperly shifted to her the burden of

proving the father's income. We conclude that CSSD's income calculations were incorrect, that it was error for the court to adopt them, and that the father should have been required to submit an income affidavit. We therefore reverse the superior court's order modifying child support.

## II. FACTS AND PROCEEDINGS

Elissa Przywojski (formerly Shanigan) and Terrence Shanigan divorced in January 2012, and Elissa was granted sole legal and primary physical custody of their two minor children. The 2012 child support order required Terrence to pay monthly child support of $1,932.92.

In June 2014 Terrence asked CSSD to review his support obligation. He gave CSSD copies of his 2013 federal tax return and the six most recent pay stubs from his employment with the State. CSSD recalculated his support obligation and determined that it could be reduced by $315.92 a month. Because this was a reduction of 16.3%, Terrence was presumed to have had a material change in circumstances as defined by Alaska Civil Rule 90.3(h), which would justify a modification of his obligation.[1] Accordingly, in January 2015 CSSD asked the superior court to modify the existing child support order to reflect its new calculations.

Elissa opposed the motion to modify, arguing that CSSD's calculations were wrong in several respects. According to Elissa, a correct calculation would result in only a 10.7% decrease from the original child support order, too small a change to justify a reduction in Terrence's support obligation. Elissa also challenged Terrence's failure to submit a sworn income affidavit in support of CSSD's request. Finally, she

---

[1]     Civil Rule 90.3(h)(1) provides that "[a] final child support award may be modified upon a showing of a material change of circumstances[,] . . . [which] will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order."

claimed that CSSD erred in assuming that Terrence had no income from a consulting business he had recently launched.

Along with her opposition Elissa filed an affidavit from her mother, a certified public accountant, who had done her own calculations based on the income information Terrence had given CSSD. This competing analysis showed that Terrence's monthly support obligation should be reduced to $1,725.24 per month, a reduction of $207.68 instead of the $315.92 proposed by CSSD. Because her figures showed only a 10.7% reduction in Terrence's obligation, Elissa argued that a material change in circumstances could not be presumed under Rule 90.3(h) and no modification was justified.

The superior court granted CSSD's requested modification in February 2015, decreasing Terrence's child support obligation to the CSSD-recommended amount of $1,617 per month. The court issued no separate written findings, but it noted on its order that it had reviewed Elissa's opposition and found "no supporting evidence" for her claims. Elissa filed successive motions for reconsideration, which the court denied.

Elissa filed this appeal. Terrence did not participate.[2]

## III. STANDARD OF REVIEW

"We use the clearly erroneous standard when reviewing factual findings, including findings regarding a party's income . . . ."[3] "Factual findings 'are clearly

---

[2]     Terrence did not file a brief, and we denied his later request to participate in oral argument. *See* Alaska R. App. P. 212(c)(10) ("When the appellee's brief is not filed as required, appellee will not be heard at oral argument except on consent of the appellant, or by request of the court.").

[3]     *Wilhour v. Wilhour*, 308 P.3d 884, 887 (Alaska 2013).

erroneous when, "after reviewing the record as a whole, [we are] left with a definite and firm conviction that a mistake has been made." ' "[4]

## IV. DISCUSSION

### A. It Was Error To Grant The Requested Modification Of Terrence's Child Support Obligation Because He Failed To Show A Material Change In His Income.

#### 1. Child support is calculated under Rule 90.3.

Rule 90.3 prescribes how child support is calculated. The starting point is the non-custodial parent's "total income from all sources."[5] Subtracted from this income figure are five "mandatory deductions" set out in Rule 90.3(a)(1)(A):

(i) federal, state, and local income tax,

(ii) Social Security tax or the equivalent contribution to an alternate plan established by a public employer, and self-employment tax,

(iii) Medicare tax,

(iv) mandatory union dues, [and]

(v) mandatory contributions to a retirement or pension plan.

Rule 90.3(a)(1)(B) also allows a deduction for "voluntary contributions to a retirement or pension plan or account . . . except that the total amount of these voluntary contributions plus any mandatory contributions . . . may not exceed 7.5% of the parent's gross wages." After the court has made these deductions (and several others not relevant here), what remains is the non-custodial parent's "adjusted annual income."

---

[4]     *Sharpe v. Sharpe*, 366 P.3d 66, 68-69 (Alaska 2016) (modification in original) (quoting *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000)).

[5]     Alaska R. Civ. P. 90.3(a)(1).

Once this amount has been determined, Rule 90.3(a)(2) gives the formula for calculating the child support obligation of the non-custodial parent. Because Terrence and Elissa have two minor children, the amount of the obligation is the adjusted annual income multiplied by .27.[6]

To trigger a modification in child support under Rule 90.3(h)(1), the party petitioning for modification must demonstrate that there has been "a material change of circumstances," which is presumed "if support as calculated under [the] rule is more than 15 percent greater or less than the outstanding support order."

### 2. Terrence's gross income for 2014 was $108,729.72.

Because Terrence submitted his request for modification before the end of 2014, CSSD extrapolated his gross annual income through the end of the year using his most recent income information. As of his latest pay stub, dated October 28, 2014, Terrence's "total gross" income from his State employment was $88,295.60. Elissa correctly extrapolates that amount to an annual income of $105,954.72.[7] In 2014 Terrence also received a $1,884 Permanent Fund Dividend (PFD) and $891 in native corporation dividends. These three amounts added together equal $108,729.72 in gross income. As Elissa notes, CSSD's calculation of Terrence's gross income, $109,269.72, was $540 too high because it again added Terrence's non-taxable cell phone allowance, already included as income on his pay stub.[8]

---

[6]     Alaska R. Civ. P. 90.3(a)(2)(B).

[7]     $88,295.60 (total gross as of October 2014) divided by 20 (total number of pay periods to date) then multiplied by 24 (total number of pay periods in 2014) equals $105,954.72.

[8]     *See* ALASKA DEP'T OF ADMIN., *How to Read Your Payroll Stub and Yearly W2 Earnings Statement* 1 http://doa.alaska.gov/dof/payroll/resource/prstubref.pdf (last
(continued...)

**3.    CSSD incorrectly calculated Terrence's Rule 90.3 adjusted annual income by overstating his federal income and Medicare tax obligations.**

The following mandatory deductions should have been subtracted from Terrence's gross income to determine his adjusted annual income under Rule 90.3(a)(1)(A): federal income tax, mandatory contributions to Alaska's Supplemental Benefits System (SBS) Annuity Plan (the State's Social Security equivalent), Medicare tax, mandatory union dues, and mandatory contributions to Terrence's retirement plan. While CSSD did take those deductions into account, Elissa argues that it erred in calculating two of them — federal income tax and Medicare tax — resulting in an incorrect figure for Terrence's annual adjusted income. We agree.

**a.    Federal income tax**

Based on the documentation Terrence provided, CSSD determined that his 2014 income tax obligation was $1,731.51 per month, or $20,778.12 per year. Elissa argues that this calculation overstated Terrence's tax obligation because it was based on his gross, rather than taxable, income. The child support guidelines worksheet that CSSD submitted to the court listed Terrence's "total taxable gross income" as $108,729.72. According to the worksheet, this number was derived, as discussed above, by extrapolating Terrence's State income to an annual figure and adding his PFD and native corporation dividend income. But as Elissa argues, Terrence's total taxable income was significantly lower, because not all of his gross income from his State employment was subject to federal taxation.

---

[8](...continued) updated Dec. 14, 2015) (explaining that "non-taxed" income, including "such things as . . . non-taxable cell phone allowances," are "included in Total Gross amount").

The United States tax code allows certain deductions from gross income before federal income tax is calculated.[9] As an Alaska State employee, Terrence was allowed deductions for the following: "non-taxed" items including a cell phone allowance ($540); employee-paid premiums, including voluntary SBS and employee health insurance premiums ($4,684.32); deferred compensation ($1,080); mandatory SBS, which is excluded from federal taxation until the employee withdraws it upon termination of employment ($6,461.94); and mandatory retirement contributions ($7,291.81).[10] Taking those deductions into account, Terrence's total taxable income for 2014, extrapolated annually and then adding the PFD and other dividends, was $88,671.65, not $108,729.72 as calculated by CSSD. This result comports with the "taxable compensation" shown on Terrence's October 2014 paycheck when extrapolated annually.[11]

The next step in the analysis is to determine the actual tax obligation. In order to do so, CSSD assumes a standard deduction for a single person. In 2014 that

---

[9]     26 U.S.C. § 211 (2012).

[10]     *See* ALASKA DEP'T OF ADMIN., *supra* note 8, at 1-2 (detailing income and contributions not subject to taxation). The amount of each of these deductions is derived by the same formula used to determine Terrence's 2014 gross income: the amount on his October 2014 paycheck divided by 20, then multiplied by 24.

[11]     Terrence's taxable compensation was listed on his October pay stub as $71,580.54. Extrapolating that amount over the entire year and adding the PFD and other dividends yields $88,671.65. Terrence's W2 and other income documentation are also consistent with this result. In 2013 his total gross income as of his last paycheck was $107,123.76, while his taxable compensation was listed as $87,876.31. According to his W2, his wages for the year were the latter number, which was used as the starting point for calculating his federal income tax. His gross income does not factor into that calculation.

standard deduction was $6,200, and the applicable personal exemption was $3,950.[12] After application of the standard deduction and the personal exemption, Terrence's taxable income was $78,521.65. The federal income tax calculated on that amount in 2014 was $15,488.[13]

CSSD did not explain to the superior court how it derived Terrence's federal income tax obligation, but whatever method it used, it arrived at a tax obligation of $20,778.12, approximately $5,290 higher than it should have been. In fact, CSSD's federal income tax determination is almost precisely what it would have been had CSSD neglected to deduct Terrence's pre-tax income, as Elissa claims occurred. Subtracting the standard deduction and personal exemption from CSSD's total taxable income figure of $108,729.72 leaves $98,579.72 in taxable income. In 2014, the tax obligation for that income was $20,777[14] — almost exactly the amount CSSD calculated. We can only conclude that CSSD failed to deduct those portions of Terrence's income that are not subject to taxation before it calculated his federal income tax.[15] This led it to deduct

---

[12]     INTERNAL REVENUE SERV., *Form 1040*, U.S. INDIVIDUAL INCOME TAX RETURN at 2 (2014), https://www.irs.gov/pub/irs-prior/f1040--2014.pdf.

[13]     INTERNAL REVENUE SERV., 1040 TAX TABLES at 85 (2014), https://www.irs.gov/pub/irs-prior/i1040tt--2014.pdf. Elissa calculated Terrence's income tax obligation at $15,398, apparently assuming that he would have selected a slightly lower alternative capital gains tax in lieu of the regular scheduled tax of $15,488. Because this minor discrepancy does not affect the analysis, we do not consider which amount more accurately reflected Terrence's actual obligation.

[14]     *Id.* at 87.

[15]     CSSD does not dispute that it is required to deduct the non-taxable elements of Terrence's income before calculating his income tax; it simply failed to do so. In an affidavit CSSD submitted to the superior court it stated that "SBS and Retirement deductions are pre-tax deductions for the purpose of calculating an individual income tax
(continued...)

$5,290 too much from Terrence's total income, resulting in an artificially low annual adjusted income for the purpose of calculating child support.

### b.      Medicare tax

Elissa also addresses Terrence's Medicare tax obligation, arguing that he would have owed only $1,460.57 rather than $1,536.36 as calculated by CSSD.[16]  The minor difference between these two numbers would not alone affect the outcome of this case, but Elissa is correct.  The Medicare tax rate for employees is 1.45% of Medicare wages (gross wages minus non-taxed items, voluntary SBS contributions, and employee health insurance premiums).[17]  CSSD's number, $1,536.36, is 1.45% of $105,954.72 — Terrence's gross income from his State employment.  It appears that CSSD based Terrence's Medicare tax obligation on his gross income without deducting income not subject to the tax.

Had CSSD calculated Terrence's Medicare tax correctly, it would have first deducted from his pay the non-taxed amounts (the $540 cell phone allowance) and pre-tax deductions such as voluntary SBS and employee health insurance ($4,684.32), yielding $100,730.40 in income subject to the Medicare tax.[18]  1.45% of that amount is $1,460.59, almost exactly what Elissa suggests — and this is the amount the State

---

[15](...continued)
obligation and determining the adjusted annual income from which income for child support purposes is calculated."

[16]      Terrence's yearly obligation would have been $1,536.36 based on CSSD's monthly Medicare tax calculation of $128.03.

[17]      26 U.S.C. § 3101(b)(1) (2012); § 3121(a), (b).

[18]      ALASKA DEP'T OF ADMIN., *supra* note 8.

actually withheld.[19]    CSSD overstated Terrence's Medicare tax obligation by approximately $75 per year and as a result, again, deducted too much money from his gross income when calculating his annual adjusted income for child support purposes.

### 4.    Reliance on CSSD's erroneous income calculations resulted in an unwarranted modification of child support.

Relying on its incorrect calculations of federal income and Medicare taxes, CSSD determined that Terrence's 2014 adjusted income was $71,868.24.[20]   CSSD applied to this figure the appropriate multiplier of .27 under Rule 90.3, concluding that Terrence's monthly child support obligation was $1,617.  The change from Terrence's original child support obligation of $1,932.92 was 16.3%.  Because that change was greater than 15%, CSSD presumed there had been a material change in circumstances justifying a modification to his obligation.

But Terrence's adjusted annual income for Rule 90.3 purposes *should* have been $76,694.15,[21] assuming the accuracy of CSSD's other deductions (which Elissa

---

[19]    Elissa appears to have derived this number through an annual extrapolation of Terrence's Medicare withholdings as of his October 2014 paycheck.  Terrence's mandatory Medicare tax withholding as of that time was $1,217.14, which extrapolated annually yields an obligation of $1,460.57.

[20]    CSSD derived this number by deducting the following from Terrence's gross income ($109,269.72, according to CSSD): mandatory SBS ($6,495); Medicare tax ($1,536.36); union dues ($1,440); mandatory retirement ($7,152); and federal income tax ($20,778.12).

[21]    Gross income of $108,729.72 (corrected so as not to double-count the phone allowance) is reduced by union dues ($1,440), CSSD's calculations of mandatory SBS ($6,495) and retirement ($7,152), along with the corrected deductions for federal income tax ($15,488) and Medicare tax ($1,460.57).

-10-                                        **7144**

does not challenge).[22]  Based on that adjusted annual income, the annual child support obligation for two children is $20,707.42, with a monthly obligation of $1,725.62 — again, almost exactly the amount Elissa proposes.  The change from the existing obligation is only 10.7%, insufficient to presume that a modification of child support is warranted under Rule 90.3(h).

In granting the requested modification, the superior court appears to have relied solely on CSSD's calculations.  We have held in the past that "CSSD has no decision-making role to play [in child support determinations], and the court has no obligation to accept CSSD's initial calculation."[23]  In *Monette v. Hoff* we considered the superior court's adoption of a child support calculation and subsequent administrative decision of CSSD (then referred to as CSED).[24]  A non-custodial parent claimed that CSED had erroneously calculated her child support obligation by overstating her income.[25]  The parent provided the court with her tax return to demonstrate that her income was far less than what CSED attributed to her, but the superior court nevertheless denied her motion to modify the child support order.[26]  We observed that the superior court did not show how it had determined child support and that "[t]he superior court may have applied a deferential standard of review of CSED's prior calculation of child

---

[22]  CSSD's calculations of Terrence's mandatory SBS and retirement are slightly different than Elissa's.  But because the differences are minor and because Elissa does not challenge them on this appeal, we do not consider them further.

[23]  *Reilly v. Northrop*, 314 P.3d 1206, 1213 (Alaska 2013) (citing Alaska R. Civ. P. 90.3; *McDonald v. Trihub*, 173 P.3d 416, 422-23 (Alaska 2007)).

[24]  958 P.2d 434, 437 (Alaska 1998).

[25]  *Id.*

[26]  *Id.*

support and adopted the support amount as calculated by CSED."[27] We noted that such an approach "would have been error, because the superior court could not simply adopt or deferentially review an administrative decision by CSED."[28]

Here Elissa provided the court with extensive documentation and her own calculations, supported by the affidavit of her accountant witness, in an attempt to demonstrate that CSSD erred. As "the party attacking the child support determination," she "bore the burden of proving, by the preponderance of the evidence, that [CSSD's] income calculations were incorrect."[29] We conclude that she met that burden.

**B.     It Was Error To Grant The Requested Child Support Modification In The Absence Of A Child Support Guidelines Affidavit From Terrence As Required By Rule 90.3.**

Elissa makes two additional arguments. First, she argues that CSSD, and therefore the superior court, erred not only in its calculation of Terrence's child support obligation but also by performing that calculation without the income documentation that Rule 90.3 requires. Second, she argues that it was error for the superior court to shift the burden to her to demonstrate that Terrence did not receive income from his new consulting business in 2014 rather than requiring him to submit an affidavit stating whether he did.

We agree that Terrence should have been required to submit an income affidavit. In its Notice of Petition for Modification, CSSD requested income information from both Elissa and Terrence, including notarized income affidavits, W-2s and tax returns, and recent pay stubs. Terrence apparently submitted only his recent pay stubs

---

[27]     *Id.*

[28]     *Id.*

[29]     *Nunley v. State, Dep't of Revenue, Child Support Enf't Div.*, 99 P.3d 7, 9 (Alaska 2004).

-12-                                                    **7144**

and an unsigned, self-prepared 2013 tax return. Elissa argues that because Terrence failed to submit requested documentation, "especially the sworn income affidavits," CSSD should not have considered his request for modification. She cites to Rule 90.3(e)(1), which requires that "each parent in a court proceeding at which child support is involved must file a statement under oath which states the parent's adjusted annual income . . . . This statement must be filed with a party's . . . motion to modify." The commentary to Rule 90.3 also states that "each parent . . . must provide the court with an income statement under oath" and "documentation of current and past income."[30]

Our case law supports Elissa's argument that submission of an income affidavit was mandatory. In *Harris v. Westfall* an appellant argued that the trial court had erred by failing to require her former husband to file a child support guidelines affidavit, and we agreed that "the [trial] court had to know [his] earning capacity and should have required him to submit a child support guidelines affidavit."[31] We also noted that the calculation of child support on remand would "require [both parents] to file current child support guidelines affidavits."[32]

An affidavit was particularly critical in this case because of Terrence's nascent consulting business, begun in 2013. Whether it generated any income in 2014 is an unresolved question of fact, though presumably Terrence has access to that information. As Elissa argues, the failure to require Terrence to file an income affidavit improperly shifted the burden to her to show what income he may have received from the consulting business or other sources not reflected in his pay stubs. It was error to grant a modification in Terrence's favor in the absence of his supporting affidavit.

---

[30] Alaska R. Civ. P. cmt. VIII(A).

[31] 90 P.3d 167, 175 (Alaska 2004).

[32] *Id.*

## V.    CONCLUSION

The order modifying the 2012 child support obligation is REVERSED.